**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**KATHY BROWN** **PLAINTIFF**

**V.** **CASE NO.: 3:12CV00293 BD**

**CAROLYN W. COLVIN,[1] Commissioner,**
**Social Security Administration** **DEFENDANT**

**ORDER AFFIRMING COMMISSIONER**

Plaintiff Kathy Brown sought judicial review of the denial of her second applications for disability insurance benefits and supplemental security income. Ms. Brown alleged she was disabled due to fibromyalgia, bulging discs, suicidal ideation, sciatic nerve damage, and irritable bowel syndrome. SSA record at 12, 126-38, 163. Ms. Brown had previously filed applications, which the Commissioner denied on October 28, 2009. Ms. Brown appealed, and the court affirmed the Commissioner's decision on December 28, 2010. See *Brown v. Astrue*, No. 3:10cv00027, 2010 WL 5423711 *1 (E.D. Ark. Dec. 28, 2009).

Ms. Brown had passed a general educational development examination and had training as a certified nursing assistant (CNA). *Id*. at 42. At the time of her hearing, she worked eight hours per day, Monday through Friday, as a cook at a retirement home. *Id*. at 41-42. She lived with her father, stepmother, and grandmother. *Id*. at 47-48.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is therefore substituted as the named Defendant for Michael J. Astrue, pursuant to Fed.R.Civ.P. 25(d).

**The Commissioner's Decision**

An administrative law judge ("ALJ") denied Ms. Brown's applications for benefits on August 31, 2011. After considering all of the evidence, the Commissioner's ALJ determined that Ms. Brown had severe impairments– degenerative disc disease of the lumbar spine, fibromyalgia, osteoarthritis, piriformis syndrome, obesity, depression, and pain disorder associated with both medical and psychological factors. *Id*. at 15. The ALJ also found, however, that Ms. Brown had the residual functional capacity ("RFC") to perform light work with only occasional balancing, stooping, kneeling, crouching, crawling, no climbing, and limited to work where interpersonal contact is incidental to the work performed, complexity of tasks is learned or performed by rote, few variables, little judgment, supervision required is simple, direct, and concrete. *Id*. at 18-23. The ALJ found that Ms. Brown could perform past relevant work as cashier-checker. *Id*. at 24. Because the vocational expert testified that a person with Ms. Brown's RFC could perform her past relevant work as a cashier-checker or, alternatively, the jobs of small products machine operator or small products inspector, the ALJ concluded that she was not disabled under the Social Security Act and denied the applications. *Id*. at 24-25.

After the Commissioner's Appeals Council denied Ms. Brown's request for review, the ALJ's decision became a final decision for judicial review. *Id*. at 1-6. Ms. Brown filed this case to challenge the ALJ's decision. (Docket entry #2) In reviewing

the decision, the court must determine whether substantial evidence supported the decision and whether the ALJ made a legal error.[2]

**Opinion Evidence**

Ms. Brown complains that the ALJ erred in rejecting the opinion of her treating physician, Vonda Gale Houchin, M.D. Ms. Brown rests much of her argument on an August, 2010 letter that Dr. Houchin wrote "To Whom It May Concern, that stated:

> Ms. Brown is a 43 year old female who suffers from degenerative joint disease of the lumbar spine. She has constant lower back pain that goes into both legs. She also has weakness and decreased stamina in legs due to her pain. She has limited education and has always done manual labor type work.
>
> She is unable to continue to work with her medical problems and her lack of education to do non-labor jobs.

*Id*. at 527.

An ALJ is obliged to give controlling weight to a treating physician's *medical* opinions that are supported by the record. See *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (citing *Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)). A medical source opinion that an applicant is "disabled" or

---

[2]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

"unable to work," however, involves an issue reserved for the Commissioner and, therefore, is not the type of "medical opinion" to which the Commissioner gives controlling weight. *Id.* (citations omitted).

Further, while medical source opinions are considered by ALJs when assessing RFC, the final determination of RFC is left to the Commissioner. See 20 C.F.R. § 404.1527(e)(2). Here, the ALJ was right to discredit Dr. Houchin's conclusion that Ms. Brown could not work.

The ALJ gave Dr. Houchin's opinion little weight because he found that it was inconsistent with the doctor's own reports and the records as a whole. SSA record at p. 22. Inconsistency between the medical evidence and Dr. Houchin's opinion was good reason for discounting the opinion.[3]

Ms. Brown began seeing Dr. Houchin in April, 2008. (Tr. 26) The record reflects that, during the relevant time period, Dr. Houchin treated Ms. Brown for an earache and

---

[3]The regulations provide that the ALJ considers all of the following factors in deciding the weight to give to any medical opinion: (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. §§ 404.1527(d), 416.927(d). If the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the applicant's] record, [the ALJ] will give it controlling weight." *Id.* at §§ 404.1527(d)(2), 416.927(d)(2); *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007).

sinus infection in April, 2009, and an ingrown toenail and back pain in June, 2009. *Id*. at 398-403. Dr. Houchin prescribed Flexeril for muscle spasms. *Id*. at 398-400.

On October 8, 2009, Ms. Brown complained to Dr. Houchin of a knot on the right side of her stomach, arthritis pain, and back pain. *Id*. at 454-55. She reported that her husband had left her and she was under stress. *Id*. at 395. Dr. Houchin diagnosed her with irritable bowl syndrome and instructed her to watch her diet. *Id*. at 396. She prescribed Bentyl. *Id*. at 396.

On June 29, 2010, Ms. Brown reported to Dr. Houchin complaining of chronic low back pain with symptoms "located in left sacroiliac region, right sacroiliac region." *Id*. at 525. Ms. Brown stated her tailbone hurt, but there was no radiating pain. She described the pain as dull and aching and said the onset was gradual. *Id*. at 525. She also complained of weight gain, arthralgias, joint pain, and joint stiffness, sleep disturbances, anxiety and depression. *Id*. at 525. On examination, however, Ms. Brown was in no acute distress. There were "no visible abnormalities. Spinal alignment exhibits normal lordosis and no scoliosis." Dr. Houchin noted bilateral paraspinal muscle spasm and tenderness, but "[a]ll motor groups [were] within normal limits of strength bilaterally." *Id*. at 526. Dr. Houchin diagnosed a backache and moderate recurrent major depression and prescribed Lexapro. She wrote: "[G]et back on lexapro. really needs to get back to counseling at midsouth. . . will do letter for her to try to help her get some help" *Id*. at 526.

Dr. Houchin's treatment records do not support her opinion that Ms. Brown could not work. Although she complained of pain, on examination Dr. Houchin found no abnormalities and her motor strength was good.

Ms. Brown also complains that the ALJ erred by giving little weight to the opinion of Bruce W. Randloph, M.D. *Id*. at 23, 455-59. Dr. Randolph performed a consultative examination of Ms. Brown and opined that Ms. Brown was severely limited in pushing, pulling, heavy lifting, and carrying more than ten pounds. *Id*. at 459. Dr. Randolph also stated that Ms. Brown could only sit for sixty minutes and stand for thirty minutes. *Id*. As the ALJ points out, however, on examination Ms. Brown exhibited normal ranges of motion in her hips and ankles and only slightly decreased range of motion in her knees, cervical spine, and lumbar spine. *Id*. at 23, 457-48. Additionally, she had normal upper extremity abilities. *Id*.

The ALJ also considered the opinions of the state agency physicians. *Id*. at 23. State agency physicians' opinions are expert opinions, and an ALJ must consider these opinions, along with the other evidence of record. See 20 C.F.R. § 416.927(f); SSR 96–6p. In contrast to Dr. Houchin's and Dr. Randolph's opinions, Ronald Crow, D.O., a state agency consultant, reviewed all of the medical records, including Dr. Randolph's report, and rendered a different medical opinion. *Id*. at 472-81. Dr. Crow found that Ms. Brown was capable of light work, and agency physician Bill F. Payne, M.D., also reviewed the evidence and agreed with Dr. Crow's assessment. *Id*. at 480, 506.

The ALJ properly considered the opinions of the state agency physicians and did not err by giving more weight to the opinion of Dr. Crow, which was based on a review of the medical evidence, than the opinions of Dr. Hauchin or Dr. Randolph, which were unsupported by the objective medical evidence. See *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence).

**Credibility**

Ms. Brown complains about the evaluation of her credibility. (#11 at pp. 30-33) An ALJ has a duty "to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

To evaluate Ms. Brown's credibility, the ALJ followed the required two-step process and considered the required factors.[4] SSA record at pp. 18-22; see *Policy*

---

[4]In considering the credibility of a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

*Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996). Thus, the question before the court is whether substantial evidence supports the ALJ's credibility evaluation.

The ALJ may discount a claimant's complaints of pain if they are inconsistent with the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole."). Here, the ALJ determined that the medical findings were inconsistent with disabling pain. SSA record at 18-22. Substantial evidence supports that determination.

Specifically, Ms. Brown complains that the ALJ should not have considered the fact that she has not received pain management or physical therapy since 2007, nor treatment from a mental health provider. Medication and treatment are, however, factors an ALJ may consider when making a credibility determination. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Ms. Brown argues that she cannot be punished for not seeing a pain management specialist or attending physical therapy when this treatment was not recommended by her physician. Ms. Brown acknowledged at the hearing that her physician had not recommended pain management or physical therapy. This fact, however, supports the

ALJ's conclusion that Ms. Brown's complaints of pain were not entirely credible, because her physicians had not found that her condition required more intensive treatment.

Ms. Brown also contends that there is no evidence that she could have afforded additional treatment even if it had been prescribed. Ms. Brown has not established that she was denied medical treatment due to a lack of financial resources. In his opinion, the ALJ noted that Ms. Brown claimed she was unable to afford her medications. But the ALJ took judicial notice that indigent care was available where Ms. Brown lived, had she asked for it. *Id*. at 21.

Ms. Brown also complains that the ALJ erred by considering her full-time work as a factor weighing against her credibility. (#11 at p. 31) As the ALJ points out, however, Ms. Brown testified that in her current job she stood eight hours per day, lifted pots that weighed 25 pounds, worked five days per week, and did not receive any special accommodation at work. The ALJ did not err in finding that this testimony contradicted Mr. Brown's allegations of disabling pain. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount a claimant's subjective complaints of pain if there are inconsistencies in the record as a whole).

Ms. Brown argues that she has a limiting mental condition that prevents her from performing unskilled, light work. She bases this argument on the facts that her primary care physician prescribed Lexapro, and on the report of Samuel Hester, Ph.D., who

performed a consultative examination of Ms. Brown in May, 2010 and diagnosed pain disorder. The record as a whole, however, does not support her argument.

Here, the ALJ determined that, in spite of Dr. Hester's diagnosis, the medical findings were inconsistent with disabling pain. Substantial evidence supports that determination. Ms. Brown reported to Dr. Hester that the Lexapro, prescribed by her primary care physician, improved her symptoms. *Id*. at 462. An MRI of Ms. Brown's lumbar spine performed on July 31, 2008, showed minimal dextroscoliosis of the lumbar spine and posterior facet joint effusions billaterally, but no herniated disc or significant neuroforaminal narrowing. *Id*. at 213-14. During the relevant time period, Dr. Houchin treated Ms. Brown conservatively with medication. *Id*. at 507-12, 525-27.

During treatment in 2007 and 2008, three of Ms. Brown's treating physicians noted that her allegations of pain were not consistent with the objective medical evidence. *Id*. at 560, 616 (Sunil Gera, M.D. at Pain Management Medical Clinic on September 26, 2007, and November 14, 2007, writing that Ms. Brown's pain history is out of proportion with his objective findings), 415 (Dr. Houchin noting on September 2, 2008, that Ms. Brown's allegations of severe pain were inconsistent with results of her MRI) 624-25 (neurosurgeon John A. Campbell, M.D. wrote after examining Ms. Brown on October 10, 2008, that he cannot find cause on the MRI for Ms. Brown's sciatica like symptoms).

These medical findings are consistent with the psychological examiner's diagnosis because "in pain disorder, the severity or duration of pain or the degree of associated

disability is unexplained by observed medical or psychological problems." Tanja Bekhuis & Emily Jane Willingham, 2 *The Gale Encyclopedia of Mental Health* 1102 (3d ed.). Despite the diagnosis, however, Dr. Hester observed on examination that Ms. Brown was able to communicate in an intelligible and effective manner, was likely to be able to cope with the typical mental demands of basic work-like tasks, and had the ability to attend and sustain concentration on basic tasks. *Id*. at 467. Dr. Hester's opinion was consistent with the ability to perform unskilled work, and Ms. Brown's allegations of disabling pain were inconsistent with the record as a whole. The ALJ had sufficient basis for discounting Ms. Brown's allegations of disabling pain.

**Residual Functional Capacity**

Ms. Brown complains she cannot do light work on a full-time basis because she cannot stand or walk for sufficient time. (#11 at p. 34) She also alleges her mental impairments prevent her from doing light work.

After evaluating a claimant's credibility, the ALJ must determine the claimant's RFC; but the claimant bears the burden of demonstrating RFC and proving disability. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619–20 (8th Cir. 2007). *Gilliam v. Califano*, 620 F.2d 691, 694 n.1 (8th Cir. 1980).

To support her claim that she cannot stand or walk for sufficient time to perform light work, Ms. Brown relies on the opinions of Dr. Houchin and Dr. Randolph. As discussed, these opinions are contrary to Ms. Brown's treatment records and testimony which provides no basis to conclude that she cannot meet the standing/walking requirements of light work. In June, 2010, Dr. Houchin noted that Ms. Brown had normal strength bilaterally in all motor groups and no pain radiating into her legs. *Id*. at 525-26. On examination by Dr. Randolph, Ms. Brown exhibited normal, or slightly decreased range of motion in all areas and normal upper extremity abilities. *Id*. at 457.

Additionally, Ms. Brown testified at the hearing that she had been able to work full-time for the past three months at a job that required her to stand for an eight hour day. There is substantial support in the record for the ALJ's conclusion that Ms. Brown could perform light work with only occasional balancing, stooping, kneeling, crouching, crawling, and no climbing of stairs, ramps, ladders, ropes, and scaffolds.

Ms. Brown points to her hospitalization after a suicide attempt in 2009 to support her claim that she could not perform the mental demands of unskilled work. The ALJ's conclusion, however, is supported by the evidence in the record.

Upon discharge from the hospital in 2009, Herbert Price, M.D., noted that Ms. Brown's mood had improved, and she was instructed to follow-up at Mid-South Health Systems. The medical records indicate that Ms. Brown did not follow up with Mid-South but was prescribed Lexapro by Dr. Houchin. When Ms. Brown was evaluated by Dr.

Hester in May, 2010, she reported that the Lexapro had helped, but that she still had some breakthrough symptoms. Dr. Hester reported that on examination Ms. Brown had a good attitude and was cooperative. *Id*. at 463. Although her mood appeared depressed, her speech was logical and relevant, and her thought content was good. *Id*. Dr. Hester concluded that Ms. Brown was able to communicate in an intelligible and effective manner, was likely to be able to cope with the typical mental demands of basic work-like tasks, and had the ability to attend and sustain concentration on basic tasks. *Id*. at 467.

On May 6, 2010, Christal Janssen, Ph.D., a state agency physician, reviewed Ms. Brown's record and found that Ms. Brown had the RFC to perform unskilled work. *Id*. at 484. On May 19, 2010, Jon Etienne Mourot, Ph.D., reviewed Ms. Brown's records on behalf of the Commissioner and agreed with Dr. Janssen's assessment. *Id*. at 505. The ALJ's residual functional capacity determination is supported by substantial evidence. *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).

**Conclusion**

Substantial evidence supports the ALJ's decision denying Ms. Brown's applications. The ALJ made no legal error. For these reasons, Ms. Brown's request for relief (#2) is DENIED, and the decision denying the applications for benefits is AFFIRMED.

DATED this 6th day of November, 2013.

____________________________________
UNITED STATES MAGISTRATE JUDGE